IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HECTOR LARA,

        Petitioner,

v.                                            CIV-04-0917 JH/LAM

RICK LOONEY, Warden,
Torrance County Detention Facility,
Estancia, New Mexico,

        Respondent,

   and

THE ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

        Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION[1]**

**PROPOSED FINDINGS**

1.    This is a proceeding on a ***Petition for a Writ of Habeas Corpus Pursuant to
28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) (hereinafter, "*Petition*") filed on
August 11, 2004.  Petitioner Hector Lara (hereinafter, "Petitioner" or "Lara") was charged with, and
convicted of, First Degree Kidnaping, Armed Robbery, Aggravated Battery (with a deadly weapon)

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and
Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections
to such Proposed Findings and Recommended Disposition with the Clerk of the United States District
Court for the District of New Mexico, 333 Lomas Boulevard, N.W., Albuquerque, New Mexico
87102.  **A party must file any objections within the ten (10) day period allowed if that party
wants to have appellate review of the Proposed Findings and Recommended Disposition.  If
no objections are filed, no appellate review will be allowed.**

and Unlawful Taking of a Motor Vehicle. (*Petition* at 1-2.) Lara challenges his conviction and sentence in the State of New Mexico's Third Judicial District Court in *State of New Mexico v. Hector Lara*, Case No. CR-2000-0526 (County of Doña Ana, New Mexico). On September 27, 2004, Respondents filed a ***Motion to Dismiss Petition for Writ of Habeas Corpus with Prejudice*** (*Doc. 7*) (hereinafter, "*Motion to Dismiss*") and their ***Answer*** (*Doc. 8*) (hereinafter, "*Answer*"). On October 26, 2004, Petitioner filed his ***Response to Respondent's [sic] Motion to Dismiss Petition for Writ of Habeas Corpus with Prejudice*** (*Doc. 11*) (hereinafter, "*Response to Motion to Dismiss*"). Respondents have not filed a reply; therefore, the *Motion to Dismiss* is ready for ruling.

2.      The Court has reviewed the *Petition*, the *Answer*, the *Motion to Dismiss*, the *Response to Motion to Dismiss* and relevant law. As set forth below, the Court finds that Petitioner's claims are without merit, under applicable standards, and recommends that the *Motion to Dismiss* be **granted**, the *Petition* be **denied** and this case be **dismissed with prejudice**. Because all of the issues in this proceeding can be resolved on the record before the Court, the Court finds that an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

## Factual and Procedural Background

3.      Lara was arrested and jailed on June 16, 2000, in connection with the robbery of a convenience store. (*Petition* at 2.)

4.      After his arrest, Lara was advised of his *Miranda* rights and agreed to talk with a detective.[2] Lara made some inculpatory statements to the detective during this interview which were

---

[2]Lara does not contest the fact or sufficiency of the administration of his *Miranda* rights or his voluntary waiver of his *Miranda* rights during this first interview. (*Petition* at 11.)

subsequently admitted at trial.[3]  However, later in the interview, Lara told the detective that he did not want to talk to him and the detective terminated the interview.  (*Petition* at 4; *Motion to Dismiss* at 5.)

5.      Later the same day, another detective, who knew Lara from having grown up with him, was asked to speak to him.  This detective reminded Lara of his *Miranda* rights and Lara agreed to talk with him.  (*Petition* at 5; *Motion to Dismiss* at 5.)  Lara gave the second detective the equivalent of a full confession, including information not disclosed in the first interview.[4]  (*Petition* at 5; *Motion to Dismiss* at 5-7.)  Lara did not ask to speak with an attorney during the second interview nor did he invoke his right to remain silent and there was no pretrial motion to suppress the statements made by Lara during the second interview.  (*Motion to Dismiss* at 4, 7; *Petition* at 5.)  Lara's admissions to the second detective were admitted at trial without objection.  (*Petition* at 5.)  On appeal, the New Mexico Court of Appeals found that at trial Lara testified that he wanted to talk to the second detective because they were friends, that the second detective reminded him of his rights, that he understood his rights, and that he wanted to tell the second detective what happened.  (*Answer, Exhibit J* at 12.)

6.      Lara was first scheduled to be tried on December 13, 2000.  (*Petition* at 6; *Answer, Exhibit C* at 3)  On that date, Lara's counsel moved for sanctions against the State for failing to

---

[3]These statements included the following: "I did it, you know.  You already got me.  They're going to do with me what they want to do with me anyways [sic]."  (*Petition* at 4; *Motion to Dismiss* at 4-5.)

[4]According to the docketing statement filed with the New Mexico Court of Appeals in Lara's direct appeal, Lara told the second detective that he had robbed the store, that he had used the handle of a squeegee as a weapon, that he had struck the store clerk with the handle, that he had forced the store clerk to pump gas in a truck which he had stolen immediately prior to the robbery, and, in essence, that he kidnaped the store clerk to have more time to escape.  (*Answer*, *Exhibit C* at 11-12.)

timely disclose evidence consisting of videotapes and still photographs made by cameras inside the convenience store.[5]  The trial court granted the motion and ordered the videotapes and photographs suppressed.  The State moved for a continuance, which was denied.  The State then moved for permission to appeal the sanctions order which was granted.  The trial was continued to allow the interlocutory appeal to proceed.  Subsequently, on a motion for reconsideration by the State, the trial court reconsidered its suppression ruling and allowed the videotapes and photographs to be used.  No interlocutory appeal was filed. (*Petition* at 6-7; *Answer*, *Exhibit J* at 2, 7-8.)

7.      Lara's trial was re-set for January 4, 2001,[6] but the trial could not go forward due to another matter on the trial court's schedule.  On January 3, 2001, the State moved for a continuance and to extend the time to commence trial to avoid the six-month deadline for bringing Lara to trial imposed by state law.[7]  The trial court granted a continuance and extended the time to commence trial by three months.[8]  Pursuant to state law, the State also petitioned the New Mexico Supreme Court

---

[5]The opinion of the New Mexico Court of Appeals in Lara's direct appeal gives the date of this motion as December 12, 2000. (*Answer*, *Exhibit J* at 7.)  However, this factual discrepancy does not alter the Court's analysis of the issues or its findings in this *habeas* proceeding.

[6]*See Answer, Exhibit H* at 13, *Exhibit J* at 5 and *Exhibit P* at 14.

[7]Under New Mexico law, a criminal defendant must generally be brought to trial within six months from arraignment unless this deadline is extended or other exceptions apply.  *See Rule 5-604, New Mexico Rules of Criminal Procedure, NMRA (2005).*  For "good cause shown," this time limit may be extended by the trial court, for up to three months, and may also be extended by the New Mexico Supreme Court.  In Lara's case, this so-called "six month rule" was about to expire in early January of 2001.  (*Answer*, *Exhibit G* at 3; *Exhibit H* at 6.)  The record indicates that Lara was arraigned on July 6, 2000. (*Answer, Exhibit C* at 3.)

[8]The New Mexico Court of Appeals noted that it appeared from the record that another reason for this continuance was to allow the trial court to investigate possible jury taint by Lara's attorney. (*Answer*, *Exhibit J at 7-8.*)  The issue of possible jury taint involved an allegedly improper verbal communication between Lara's trial counsel and members of the jury panel on
(continued...)

for an enlargement of time to commence trial, and was granted an extension until August of 2001.[9]

(*Petition* at 8; *Answer*, *Exhibit J* at 5, 7.)

     8.      The trial was re-set for March 20, 2001.[10]  However, on that date Lara's counsel told the court that he had not received notice of the trial setting and was not prepared.  He requested a continuance of the trial and the request was granted.  (*Petition* at 8; *Answer*, *Exhibit J* at 5.)

     9.      The trial was re-set for July 12, 2001, and commenced that day.  On July 11, 2001, Lara's counsel filed a motion to dismiss for violation of Lara's constitutional right to a speedy trial, which was denied.   (*Petition* at 8; *Answer*, *Exhibit J* at 5, 8.)

     10.     Lara testified at trial.  According to Lara's docketing statement filed in his direct appeal, in his testimony at trial he admitted to robbing the store, using a squeegee handle as a weapon and stealing a pickup truck which he used as a getaway vehicle.  Additionally, he testified that he hit the store clerk, although only once, and did not injure him badly, and that he made the store clerk fill the truck with gas but did not kidnap the clerk  (*Answer*, *Exhibit C* at 12.)

     11.     In addition to the testimony of Lara and the two detectives, the evidence at trial also included: videotapes from the convenience store's surveillance cameras, and still photos from the

---

[8](...continued)
December 13, 2000.  (*Answer*, *Exhibit H* at 5-6.)

[9]The *Petition* gives this date as August 27, 2001, and the decision of the New Mexico Court of Appeals and the *Motion to Dismiss* give this date as August 5, 2001.  (*Petition*, at 8; *Motion to Dismiss* at 14; *Answer*, *Exhibit J* at 5.)  This factual discrepancy does not alter the Court's analysis of the issues or its findings in this proceeding.

[10]This setting is given as both March 20, 2001 and March 28, 2001, in the Memorandum Opinion of the New Mexico Court of Appeals filed in Lara's direct appeal.  (*Answer*, *Exhibit J* at 5, 8.)  This factual discrepancy does not alter the Court's analysis of the issues or its findings in this proceeding.

videotapes, showing a person who looked like Lara rob the store and hit the store clerk; the testimony of the store clerk that a man about his own height and wearing a blue and grey shirt robbed the store of about $75.00, hit him on the head with an instrument, dragged him outside and forced him to pump gas into a pickup truck, pushed him into the truck and drove away with him until he could escape (the clerk testified that he did not get a good look at the person who robbed the store because the person was behind him most of the time and he had been trained  not to confront or look directly at an assailant); the testimony of a police officer who saw a person she later identified as Lara run from a truck (matching the description of the stolen truck the night of the robbery) in the direction of a Denny's restaurant; and the testimony of another police officer that he arrested Lara the night of the robbery near the Denny's after he saw him carrying what appeared to be a blue and white shirt. (*Petition* at 11; *Answer, Exhibit C* at 6-10; *Exhibit H* at 1-2.)  There was also testimony at trial that Lara was found to have $79.00 in his left front trouser pocket at the time of his arrest, which was the same pocket into which the robber, shown on the store videotapes, put the stolen money.  (*Answer, Exhibit C at 10.*)

12.     On July 13, 2001, the jury found Lara guilty under state law of first degree kidnaping, armed robbery, aggravated battery with a deadly weapon and unlawful taking of a motor vehicle. (*Answer*, *Exhibit A* at 1.)

13.     Lara was incarcerated during the entire period of time between the date of his arrest on June 16, 2000, and the date his trial began on July 12, 2001.  (*Answer*, *Exhibit A* at 3.)

14.     Following his trial, Lara was sentenced to a total of twenty-seven years of imprisonment (with nine of these years suspended), followed by two years of parole and five years of probation (to run concurrently with parole), with credit for pre-sentence and post-sentence

confinement.  He was committed to the custody of the New Mexico Corrections Department and is currently incarcerated at the Torrance County Detention Facility in Estancia, New Mexico, where the warden is Respondent Rick Looney. (*Answer*, *Exhibit A* at 1-3; *Petition* at 2.)

15.     Lara appealed his conviction to the New Mexico Court of Appeals.  On appeal, he raised the following issues: (1) whether he was denied his state and federal constitutional rights to the effective assistance of counsel by his attorney's failure to move to suppress the statements that Lara made to the second detective which, he alleged, were obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) whether he was denied his state and federal constitutional right to a speedy trial by the delay of almost thirteen months between his arrest and trial.[11]  (*Answer*, *Exhibit C* at 14-15.)  In a Memorandum Opinion filed on April 10, 2003, the Court of Appeals affirmed Lara's conviction on all issues. (*Answer*, *Exhibit J* at 1.)

16.     On May 9, 2003, Lara filed a petition for writ of certiorari to the New Mexico Supreme Court, which he subsequently amended, seeking review of the decision of the New Mexico Court of Appeals.  (*Answer*, *Exhibits K and L.*)  Lara's petition, as amended, presented the same issues for review as his appeal to the Court of Appeals.  (*Answer*, *Exhibit L* at 1.)  On June 25, 2003, the New Mexico Supreme Court granted his petition and issued a writ of certiorari with respect to the issues of: (1) admission of the videotapes and photographs into evidence; and (2) violation of his right to a speedy trial.  (*Answer*, *Exhibits M and N.*)

---

[11]On appeal, Lara also raised the issue of whether the trial court committed reversible error by admitting into evidence the videotapes and photographs that had been disclosed to his attorney just before the first trial setting.  However, Lara does not raise that issue in this *habeas* proceeding. (*Answer*, *Exhibit C* at 13.)

17.     On February 16, 2004, following oral argument and briefing, the New Mexico Supreme Court, without issuing an opinion, entered an order quashing its writ of certiorari and Lara's case was remanded to the New Mexico Court of Appeals for further proceedings.  (*Answer*, *Exhibits R, S and T*.)  On February 27, 2004, the Court of Appeals issued a mandate remanding the case to the trial court.  (*Answer, Exhibit U.*)  Lara did not file a petition for *habeas* relief in the state courts.

18.     On August 11, 2004, Lara filed his petition for federal *habeas* relief with this Court. The Court finds that Lara's *Petition* was timely filed and that he has exhausted the remedies available to him in the courts of the State of New Mexico.

## Claims for *Habeas Corpus* Relief

19.     As grounds for federal *habeas* relief pursuant to 28 U.S.C. § 2254, Lara asserts claims of ineffective assistance of counsel and violation of his right to a speedy trial.

20.     For his ineffective assistance of counsel claim, Lara asserts that his trial counsel failed to file a pre-trial motion to suppress the inculpatory statements made by Lara during his interview with the second detective which violated his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution as defined in *Strickland v. Washington*, 466 U.S. 668 (1984).  Lara contends that his counsel should have filed a motion to suppress because these statements were obtained in violation of his constitutional privilege against self-incrimination.[12]

21.     For his speedy trial claim, Lara contends that the delay of almost thirteen months between the date of his arrest and the date of his trial violated his right to a speedy trial under the

---

[12]Lara's *Petition* describes this privilege as a Fourth Amendment right, but the privilege falls under the Fifth Amendment.  (*Petition* at 10-14.)

Sixth Amendment to the United States Constitution and the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).

### Standard of Review

22.     The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996[13] (hereinafter, "AEDPA"), govern this case.[14]  Review of state court decisions under AEDPA is highly deferential.  The Court cannot grant Petitioner *habeas* relief pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, unless the decision in Petitioner's state court proceeding: (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.  *See, e.g., Bell v. Cone*, ___ U.S. ___ ,125 S. Ct. 847 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Bell v. Cone*, 535 U.S. 685 (2002); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Bush v. Neet*, 400 F.3d 849 (10th Cir. 2005); *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004); *Miller v. Mullen*, 354 F.3d 1288 (10th Cir. 2004).

---

[13]110 Stat. 1214.

[14]The standards in AEDPA apply to this case because the *Petition* was filed after the effective date of AEDPA which was April 24, 1996.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003), *cert. denied*, 540 U.S. 1050 (2003).

23.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. at 71, quoting *Williams v. Taylor*, 529 U.S. at 412.

24.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413.  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.*  However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . .  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. at 8). *See also Woodford v. Visciotti*, 537 U.S. at 24 (noting presumption that state courts know and follow the law); *Miller v. Mullen*, 354 F.3d at 1292-1293 (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law).  Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply.  So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[15]  Moreover, if a state court's decision does

---

[15]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v.*
(continued...)

not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.

25.     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent  if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413.  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).  "Rather, that application must be objectively unreasonable."  *Id.* at 76.

26.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. at 528.

<u>**Analysis**</u>

27.     Subject to the foregoing standards, the Court considers Lara's claims of constitutional violations.

_____

[15](...continued)
*Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with  respect to that claim.")

## Ineffective Assistance of Counsel Claim

28.     Lara contends that his trial counsel was ineffective in failing to file a pre-trial motion to suppress the inculpatory statements that Lara made during his second interview.  Lara contends that he invoked his *Miranda* rights during the first interview (by telling the first detective that he did not want to talk to him anymore) and that his subsequent waiver of those rights during the second interview was not voluntary because he did so as a result of artifice and exploitation by the police in having the second detective, who was a childhood friend, interview him.  (*Petition* at 5, 12-14; *Response to Motion to Dismiss* at 3-4.)  Lara argues that if a motion to suppress had been filed, "it is almost a certainty that it would have been granted," and without the inculpatory statements from the second interview there is "at least a reasonable probability that the verdict would have been different."  (*Id.* at 14.)

29.     Claims of ineffective assistance of counsel are mixed questions of law and fact. *Turrentine v. Mullin*, 390 F.3d 1181, 1204 (10th Cir. 2004) (applying AEDPA).  These claims are governed by the two-pronged standard in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *Strickland* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1). *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Under the *Strickland* standard, Lara must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. at 687.  To establish deficient performance, Lara must show that his counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. at 521 (quoting *Strickland v. Washington*, 466 U.S. at 688.)  To establish prejudice to his defense, Lara must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [;] [a] reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694). Both showings must be made to satisfy the *Strickland* standard. *Strickland v. Washington*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

30.     The alleged ineffectiveness of Lara's trial counsel was raised in his direct appeal. The New Mexico Court of Appeals, applying the first prong of the *Strickland* standard, found that: (1) Lara failed to point to any evidence indicating that the atmosphere of the second interview was coercive or that Lara did not understand his *Miranda* rights; (2) Lara failed to point to any evidence of overreaching by the police; and (3) Lara testified at trial that he wanted to talk to the second detective because they were friends, that the second detective reminded him of his rights, that he told the second detective that he understood his rights, and that he wanted to tell the second detective everything that happened that night. (*Answer*, *Exhibit J* at 11-12.) The Court of Appeals looked at the totality of the circumstances surrounding the second interview and concluded, based on the facts, that Lara's inculpatory statements in the second interview were made voluntarily, with an understanding of his *Miranda* rights. (*Answer, Exhibit J* at 11-12.) Accordingly, the Court of Appeals held that a motion to suppress Lara's statements in the second interview was not warranted and, therefore, the performance of Lara's counsel was not deficient. *Id.* at 12. In so holding, the Court of Appeals noted the absence of any suggestion that Lara did not understand his *Miranda* rights. *Id.* at 11.

13

31.     The New Mexico Court of Appeals analyzed Lara's claim that he did not voluntarily waive his constitutional privilege against self-incrimination during the second interview in accordance with applicable United States Supreme Court precedent.[16]  "Waiver of one's Fifth Amendment privilege against self-incrimination requires that the individual 'voluntarily, knowingly and intelligently' waive his constitutional privilege." *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002) (quoting *Miranda v. Arizona*, 384 U.S. at 444).  This standard has two elements:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (citing *Colorado v. Spring*, 479 U.S. 564, 573 (1987), and *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  *See also Miller v. United States*, 396 F.2d 492, 496 (8th Cir. 1968) (confession not necessarily invalid because *Miranda* warnings were not given in full each time interrogation process resumed - ultimate question is whether defendant, with full knowledge of his legal rights, knowingly and intentionally relinquished them).

32.     In this *habeas* proceeding, this Court must apply the deferential standard of review set forth in 28 U.S.C. § 2254(d) to the state court decision, as explained in *Williams v. Taylor,* 529 U.S. 362 (2000).

---

[16]The question of whether Lara's inculpatory statements in the second interview were voluntary is a mixed question of law and fact. *Trice v. Ward*, 196 F.3d 1151, 1169 (10th Cir. 1999), citing *Miller v. Fenton*, 474 U.S. 104, 111-112 (1985).

33.     Because the New Mexico Court of Appeals identified the correct governing legal principles, *i.e.,* the two-pronged *Strickland* standard for ineffective assistance of counsel and the United States Supreme Court standard on waiver of the Fifth Amendment privilege against self-incrimination, in deciding whether the performance of Lara's counsel was constitutionally ineffective, this Court's review under 28 U.S.C. §2254(d)(1) is limited to deciding whether the state court unreasonably applied those principles to the facts of Lara's case.[17]  This Court must also decide whether the state court decision is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding pursuant to 28 U.S.C. § 2254(d)(2).

34.     Based on the record before it, this Court finds that Lara's ineffective assistance of counsel claim fails both prongs of the *Strickland* standard.  With respect to the first prong of *Strickland*, Lara's trial counsel had no basis for moving to suppress Lara's statements in the second interview because of the dearth of evidence that these statements were involuntary or that Lara did not understand his *Miranda* rights.  Counsel's failure to raise an issue without merit does not amount to constitutionally ineffective assistance of counsel.  *See United States v. Dixon*, 1 F.3d 1080, 1083 n. 5 (10th Cir. 1993) (abrogated on other grounds) (failure to raise issue without merit does not constitute deficient performance by counsel).  With respect to the second prong of *Strickland*, the suppression of Lara's statements in the second interview would not have made a difference in the outcome of the trial, most notably because Lara's inculpatory statements from the first interview were

_____

[17]Lara has not cited, nor has the Court found, any cases establishing United States Supreme Court precedent on the issue of ineffectiveness of counsel in the context of a claim of failure to seek suppression of an allegedly involuntary confession involving materially indistinguishable facts. Accordingly, the state court decision in Lara's case is not "contrary to" established Supreme Court precedent on the ground that the state court decided Lara's case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See 28 U.S.C. § 2254(d)(1).*

before the jury and he did not challenge their admission.  Moreover, even apart from his own testimony at trial, there was considerable other evidence that Lara committed the crimes for which he was convicted, including: the eyewitness testimony of the store clerk which implicated him in all four crimes with which he was charged; the videotapes and photographs from the store showing a person who looked like Lara robbing the store and hitting the store clerk; and the testimony of the police officers about the circumstances of Lara's arrest.

35.     Accordingly, this Court concludes that the state court decision did not unreasonably apply United States Supreme Court principles to the facts of Lara's case.  Nor does the Court find any indication that the state court decision on ineffective assistance of counsel is based on an unreasonable determination of the facts given the evidence presented in the state court proceeding.

36.     The Court, therefore, **FINDS** that the ruling by the New Mexico Court of Appeals on Lara's ineffective assistance of counsel claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the Court concludes that federal *habeas* relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with respect to Lara's claim of ineffective assistance of counsel.

## Speedy Trial Claim

37.     Lara asserts that his Sixth Amendment right to a speedy trial was violated because his trial did not occur until almost thirteen months after he was arrested.  (*Petition* at 19.)

38.     "[T]he Sixth Amendment's speedy trial provision . . . [is] 'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of

16

an accused to defend himself.'"  *United States v. Marion*, 404 U.S. 307, 320 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)).  However, while the passage of time "may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself," mere delay, by itself, is not sufficient to establish a violation.  *Id.* at 321-322.

39.     There is no bright-line rule for determining when a violation of the right to a speedy trial has occurred.  Instead, the United States Supreme Court has held:

> [T]he right to speedy trial is a more vague concept than other procedural rights.  It is, for example, impossible to determine with precision when the right has been denied.  We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.  As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Barker v. Wingo*, 407 U.S. at 521 (footnote omitted).  Accordingly, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."  *Id.* at 522.

40.     The United States Supreme Court has adopted an *ad hoc* balancing test for determining if the right to a speedy trial has been violated "in which the conduct of both the prosecution and the defendant are weighed."  *Barker v. Wingo*, 407 U.S. at 530.  Factors which courts should assess in applying the balancing test are: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant.  *Id.* at 530.  None of these factors, by itself, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id.* at 533.  *See also Jackson v. Ray*, 390 F.3d 1254, 1260-1261 (10th Cir. 2004).

17

41.     Lara raised the speedy trial issue in his direct appeal.  He argued, as he does here, that the delay in commencing his trial was a violation of his constitutional right to a speedy trial under the *Barker v. Wingo* balancing test.  (*Answer*, *Exhibit G* at 23, *Exhibit K* at 24-25.)

42.     In Lara's direct appeal, the New Mexico Court of Appeals applied the *Barker v. Wingo* balancing test to the facts of his case and rejected his speedy trial claim, finding that, on balance, his right to a speedy trial was not violated.  (*Answer*, *Exhibit J* at 5-9.)

43.     The New Mexico Court of Appeals identified the correct governing legal principles - the *Barker v. Wingo* balancing test - in deciding whether Lara's right to a speedy trial was violated. Therefore, this Court's review under 28 U.S.C. § 2254(d)(1) is limited to deciding whether the state court unreasonably applied those principles to the facts of Lara's case.[18]

44.     Because the state court decision results from a balancing of the *Barker v. Wingo* factors, the Court considers the relevant factors and the balancing of the factors in determining whether the state court unreasonably applied the *Barker v. Wingo* balancing test to the facts of Lara's case.  *See Jackson v. Ray*, 390 F.3d at 1260.

### First Factor - Length of the Delay

45.     The length of the delay is a threshold "triggering" mechanism for speedy trial purposes.  Only if the length of the delay is "uncommonly long" is it considered "presumptively prejudicial," triggering a balancing of the length of the delay with the other *Barker v. Wingo* factors. *Doggett v. United States*, 505 U.S. 647, 651-652 (1992).    In Lara's case, there was a delay of

---

[18]Lara has not cited, and the Court has not found, any cases establishing United States Supreme Court precedent on the issue of violation of the right to a speedy trial involving facts that are materially indistinguishable from the facts of Lara's case.  Accordingly, the state court decision in Lara's case is not "contrary to" established Supreme Court precedent on the ground that the state court decided Lara's case differently than the Supreme Court has on a set of materially indistinguishable facts. *See 28 U.S.C. § 2254(d)(1).*

almost thirteen months between his arrest on June 16, 2000, and his trial on July 12, 2001.  While the Tenth Circuit has declined to draw a bright line establishing what length of pretrial delay is "presumptively prejudicial," *Castro v. Ward*, 138 F.3d 810, 819 (10th Cir. 1998), it has acknowledged the United States Supreme Court's statement that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation [*sic*] delay 'presumptively prejudicial' at least as it approaches one year."  *Id.* (citing *Doggett v. United States*, 505 U.S. at 652 n.1 (1992)).

46.     The New Mexico Court of Appeals concluded that the pretrial delay in Lara's case was presumptively prejudicial based on the intermediate complexity of the case, the length of the delay and the State's concession that the delay was presumptively prejudicial.  (*Answer*, *Exhibit J* at 6.)   In this proceeding, Respondents concede that the delay in Lara's case was presumptively prejudicial.  (*Motion to Dismiss* at 13.)  Because the United States Supreme Court has acknowledged, without establishing a bright-line rule, that the lower courts have generally considered post-accusation delay to be "presumptively prejudicial" as it approaches one year, this Court finds that the state court's decision to consider the other *Barker v. Wingo* factors in Lara's case was not an unreasonable application of Supreme Court precedent.

47.     The Court must also consider the length of the delay in its continuing analysis of the *Barker v. Wingo* factors.  In this regard, the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. at 652.  The New Mexico Court of Appeals made no specific finding on this issue.  Because the delay in Lara's case extended only slightly (less than one month) beyond the generally presumptively prejudicial period of one year,[19] the Court finds that this factor weighs in favor of Lara, but only slightly.

_____

[19]*See Doggett v. United States*, 505 U.S. at 652, n.1.

**Second Factor - Reasons for the Delay**

48.     The Court must also consider the reasons for the delay in Lara's case.  The New

Mexico Court of Appeals found that both parties were responsible for the delay in Lara's case, but

weighed this factor slightly against Lara because his actions were, in part, the cause of the trial being

delayed beyond six, and then nine, months.[20]  The Court of Appeals made the following findings.  The

first delay, of the December 13, 2000 trial setting, was attributable to the State which sought a

continuance of the trial setting to pursue an interlocutory appeal.  The Court of Appeals weighed this

delay against the State.  The second delay, of the January 4, 2001 trial setting, was due to the trial

court's schedule.  Consistent with United States Supreme Court precedent, the Court of Appeals

weighed this delay against the State but not heavily.[21]  The third delay, a request by the State for an

extension of three additional months to commence trial, was due to the State's need for an extension

of New Mexico's six month rule and also to investigate possible jury taint by Lara's counsel.  The

Court of Appeals found that Lara bore equal responsibility for this delay and weighed this delay

equally between the parties.  The fourth delay, of the March, 2001 trial setting, was attributable to

Lara whose counsel sought a continuance because he had not received notice of the trial and was not

prepared for trial.  The Court of Appeals weighed this delay against Lara.  (*Answer*, *Exhibit J* at 6-8.)

49.     United States Supreme Court precedent does not preclude the New Mexico Court of

Appeals' weighing of the "reasons for delay" factor slightly against Lara, particularly when Lara's

---

[20]Under New Mexico state law, six months is the general time limit for bringing a criminal
case to trial, absent a judicial extension, and nine months is the presumptively prejudicial time limit
for commencing trial in a simple case.  *See Rule 5-604, New Mexico Rules of Criminal Procedure,
NMRA (2005)*; *State v. Urban*, 87 P.3d 1061, 1064 (2004).

[21]A neutral reason, such as the court's heavy docket, weighs against the state but not heavily.
*See Barker v. Wingo*, 407 U.S. at 531 ("A more neutral reason such as . . . overcrowded courts
should be weighted less heavily but nevertheless should be considered since the ultimate responsibility
for such circumstances must rest with the government rather than with the defendant.")

trial counsel, by requesting a continuance, contributed to the delay beyond the one year period when lower courts have generally found that delays become presumptively prejudicial.

### Third Factor - Assertion of the Right to a Speedy Trial

50.      Lara asserted his speedy trial claim by filing a motion to dismiss with the trial court on July 11, 2001, more than twelve months after his arrest and one day before trial.  (*Answer*, *Exhibit G* at 21.)  His motion was denied.  Because Lara asserted his right to a speedy trial in the trial court, the New Mexico Court of Appeals weighed this factor in his favor but without much weight because most of the delay had passed and because Lara moved for dismissal instead of moving for a prompt trial.  (Answer, Exhibit J, at 8.)  The Court does not find this to be an objectively unreasonable application of United States Supreme Court precedent to the facts of Lara's case.  "[I]n general, the sooner a criminal defendant raises the speedy trial issue, the more weight this factor lends to his claim."  *Jackson v.* Ray, 390 F.3d at 1263, citing *Barker v. Wingo*, 407 U.S. at 534-535; *see also United States v. Santiago - Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (demand for speedy trial filed immediately before trial weighed against defendant).

### Fourth Factor - Prejudice

51.      Under *Barker v. Wingo*, speedy trial claims require an analysis of prejudice.  While a showing of prejudice to the defense is not essential to a speedy trial claim, "there is some reluctance to find a speedy trial deprivation where there is no prejudice."  *United States v. Brown*, 600 F.2d 248, 254 (10th Cir. 1979).

52.      The Court does not find this to be a case of such extreme delay that prejudice may be presumed without a particularized showing.  *See Doggett*, 505 U.S. at 655-656.  Therefore, the Court analyzes Lara's case for a particularized showing of prejudice.  *See Jackson v. Ray*, 390 F.3d at 1263-1264.

53.     The United States Supreme Court has recognized three interests that the right to a speedy trial is designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532.  The most important interest is impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*  An individual claiming a speedy trial violation has the burden of showing prejudice and the mere "possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights were violated." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *see also Jackson v. Ray*, 390 F.3d at 1264.

54.     The New Mexico Court of Appeals acknowledged Lara's argument on direct appeal that he was prejudiced by pretrial incarceration and by anxiety and concern while waiting for his trial. However, it also noted the absence of any allegations that Lara's defense was impaired by the delay. Without discussion, the Court of Appeals appeared to conclude that Lara was not prejudiced by his trial delay and held that the prejudice factor did not weigh in Lara's favor.  (*Answer*, *Exhibit J*, at 9.)

55.     In this proceeding, Lara repeats the same arguments that he made to the Court of Appeals,  *i.e.,* that he was prejudiced by his pretrial incarceration and by anxiety and concern.  He does not contend that his defense was impaired by the delay.  Lara asserts that he was prejudiced because he was aware of the charges against him from the date of his arrest, he suffered anxiety and concern about the outcome of his case, and he endured incarceration throughout the period between the dates of his arrest and trial.  (*Response to Motion to Dismiss* at 8-9.)

56.     Although Lara was incarcerated while awaiting trial and presumably experienced the anxiety and concern attendant to being the subject of pending criminal charges, he does not allege any special harm or undue pressures that distinguish his case from that of any other arrestee awaiting trial.

*See United States v. Dirden*, 38 F.3d 1131, 1138-1139 (10th Cir. 1994) (finding no prejudice where defense not impaired and defendant failed to allege any special harm resulting from his pretrial incarceration); *see also United States v. Santiago - Becerril*, 130 F.3d 11, 23 (1st Cir. 1997) (considerable anxiety normally results from initiation and pendency of criminal charges but in determining prejudice from delay, only undue pressures are considered).  Moreover, there is nothing to indicate, and Lara makes no claim, that his defense was impaired by the delay.[22]  Given these circumstances, it was not objectively unreasonable, under United States Supreme Court precedent, for the New Mexico Court of Appeals to conclude that Lara was not prejudiced by his pretrial delay and, therefore, this *Barker v. Wingo* factor did not weigh in his favor.

### Balancing of the Factors

57.    The *Barker v. Wingo* factors are related and must be balanced.  *Barker v. Wingo*, 407 U.S. at 533.  The factors "must be considered together with such circumstances as may be relevant."  *Id.*  The factors "have no talismanic qualities . . . [and] courts must still engage in a difficult and sensitive balancing process."  *Id.* (footnote omitted).

58.    The New Mexico Court of Appeals analyzed the appropriate *Barker v. Wingo* factors, applied the balancing test and concluded that Lara's right to a speedy trial was not violated.  (*Answer*, *Exhibit J* at 9.)  *Habeas* relief is available only if there is no possible balancing of the factors that both supports the state court decision and is not contrary to United States Supreme Court precedent. *Jackson v. Ray*, 390 F.3d at 1266-67.

59.    The Court finds that the New Mexico Court of Appeals' balancing of the *Barker v. Wingo* factors, and its ultimate decision that Lara's right to a speedy trial was not violated,

---

[22]Lara does not allege, and there is no indication in the record, that his pretrial incarceration had the effect of increasing his sentence, or that his witnesses could no longer be found or that their memories of the evidence had faded.

were not objectively unreasonable under United States Supreme Court precedent.  Nor was its decision based on an unreasonable determination of the facts given the evidence presented in the state court proceeding.

60.    The Court, therefore, **FINDS** that the ruling by the New Mexico Court of Appeals on Lara's speedy trial claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.    Accordingly, the Court concludes that federal *habeas* relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with respect to Lara's claim of violation of his right to a speedy trial.

## RECOMMENDED DISPOSITION

The Court recommends that Respondents' ***Motion to Dismiss Petition for Writ of Habeas Corpus with Prejudice*** (*Doc. 7*) be **GRANTED**, Petitioner's ***Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

_____
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

24